A07A2321. DISHAROON v. THE STATE.

(652 SE2d 902)

BLACKBURN, Presiding Judge.

Brantley Disharoon was arrested and indicted at the age of thirteen on two counts of aggravated sodomy,[1] two counts of aggravated sexual battery,[2] and four counts of child molestation.[3] After nearly five years passed without a trial, Disharoon filed a motion for discharge and acquittal on the basis that the State had violated his right to a speedy trial. He appeals the order denying his motion, arguing that the trial court erred in ruling that his right to a speedy trial under the Sixth Amendment to the United States Constitution had not been violated and in basing its ruling on unsupported evidence. For the reasons set forth below, we affirm the trial court's order.

The record shows that thirteen-year-old Disharoon was arrested on August 1, 2002, by Paulding County authorities on charges that he committed acts of aggravated sodomy and aggravated sexual battery on a seven-year-old male friend. On August 20, 2002, a bond order was issued, and Disharoon was released from custody after having been incarcerated in the youth detention center for 21 days. As a condition of his bond, Disharoon was prohibited from having contact with any child under the age of 16 unless supervised by an adult over

---

[1] OCGA § 16-6-2 (a) (2).
[2] OCGA § 16-6-22.2 (b).
[3] OCGA § 16-6-4 (a).

the age of 18. On November 6, 2002, an order was issued, allowing his initial defense counsel to withdraw from representation.

On December 6, 2002, Disharoon was indicted on two counts of aggravated sodomy, two counts of aggravated sexual battery, and four counts of child molestation. He was arraigned on December 17, 2002, and by January 8, 2003, his current defense counsel had filed various pretrial motions on his behalf. The case was eventually scheduled on a trial calendar for the weeks of April 12, 2004, and May 10, 2004; however, defense counsel successfully moved for the April trial date to be continued on the basis that counsel was suffering from a medical problem. On May 11, 2004, Disharoon's counsel filed a motion requesting a 60-day continuance. The motion acknowledged the fact that he had missed the previous day's calendar call due to a scheduling oversight but argued that a continuance was necessary in order to allow a defense expert to review videotaped interviews of the alleged victim, which the State had yet to produce. Consequently, the State produced the videotapes, and the trial court entered an order setting August 9, 2004, as the trial date.

On August 3, 2004, Disharoon's counsel filed another motion for continuance, requesting that the case be continued until the next term of court in light of his co-counsel's continuing health problems. This motion was followed three days later by a letter to the trial court from counsel, requesting that the case be set for December 13, 2004. The court agreed, and Disharoon's trial was set for that date. On December 13, 2004, the court rescheduled the trial for February 14, 2005, due to the death of defense counsel's father earlier that month. On January 31, 2005, Disharoon again successfully moved for a continuance until the next term of court, on the ground that his expert witness had recently died. In his motion, Disharoon indicated that another expert had already been hired but would not be available for trial until March 2005.

Over the course of the next two years, the case appeared on numerous trial calendars, including those for the weeks of October 10, 2005, November 14, 2005, January 9, 2006, October 9, 2006, and November 13, 2006, but was never reached. Eventually, the case was set for trial for June 11, 2007, with a calendar call scheduled for May 29, 2007. However, on the day of the calendar call, Disharoon filed a motion for discharge and acquittal, contending that he had been deprived of his right to a speedy trial under the Sixth Amendment to the United States Constitution. A hearing on the motion was held on June 5, 2007, during which Disharoon, his family, and a friend of the family testified. On June 7, 2007, the trial court denied Disharoon's

motion. This appeal followed.[4]

1. Disharoon contends that the trial court erred in denying his motion for discharge and acquittal based on the State's failure to provide him a speedy trial. We disagree.

> A speedy trial is guaranteed an accused by the Sixth Amendment to the Constitution of the United States, and also Article I of the Constitution of this State (now Art. I, Sec. I, Par. XI (a) of the 1983 Ga. Constitution). These rights attach at the time of arrest or when formal charges are brought, whichever is earlier.

(Punctuation omitted.) *Ingram v. State.*[5] The test for determining whether the right to a speedy trial has been violated is set forth in *Barker v. Wingo,*[6] which provides that four factors are to be considered: length of delay; reason for the delay; defendant's assertion of the right to a speedy trial; and prejudice to the defense. *Boseman v. State.*[7] "None of the factors are regarded as necessary or sufficient to finding deprivation of the right to a speedy trial, but rather the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant." (Punctuation omitted.) *State v. Giddens.*[8] Absent an abuse of discretion, we must affirm the trial court's balancing of the four *Barker* factors. *State v. Sutton.*[9]

(a) *The length of the delay.* Generally, any delay approaching a year raises a threshold presumption of prejudice. *Doggett v. United States.*[10] "If the delay passes this threshold test of 'presumptive prejudice,' then the *Barker* inquiry is triggered." (Punctuation omitted.) *Scandrett v. State.*[11] Here, the delay was approximately 58 months from Disharoon's arrest (August 1, 2002) to the date of his scheduled trial (June 11, 2007). Thus, the trial court correctly concluded that the delay was presumptively prejudicial and properly considered the other *Barker* factors to determine if Disharoon was denied his right to a speedy trial. See *Giddens*, supra, 280 Ga. App. at 587-588 (delay of nearly five years is presumptively prejudicial);

---

[4] The denial of such a motion, even though interlocutory in nature, may be reviewed by direct appeal. *Callaway v. State*, 275 Ga. 332, 333 (567 SE2d 13) (2002).

[5] *Ingram v. State*, 280 Ga. App. 467, 468-469 (1) (634 SE2d 430) (2006).

[6] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

[7] *Boseman v. State*, 263 Ga. 730, 731 (1) (438 SE2d 626) (1994).

[8] *State v. Giddens*, 280 Ga. App. 586, 587 (634 SE2d 526) (2006).

[9] *State v. Sutton*, 273 Ga. App. 84, 85 (614 SE2d 206) (2005).

[10] *Doggett v. United States*, 505 U. S. 647, 652 (II), n. 1 (112 SC 2686, 120 LE2d 520) (1992).

[11] *Scandrett v. State*, 279 Ga. 632, 633 (1) (a) (619 SE2d 603) (2005).

*Ingram*, supra, 280 Ga. App. at 469 (1) (a) (delay of 48 months is presumptively prejudicial).

(b) *The reason for the delay*. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." (Punctuation omitted.) *Ingram*, supra, 280 Ga. App. at 469 (1) (b). Here, there is no evidence nor finding by the trial court that the State intentionally delayed the trial to impair Disharoon's defense. In considering the reason for the delay, the trial court noted that Disharoon moved for a continuance on three separate occasions and that two of those motions requested that the case be continued until the next term of court. The court also noted that the case had been on various trial calendars for 11 weeks but had not been reached. Given these facts, the court determined that the reason for the delay could not be attributed to either Disharoon or the State. We agree and "conclude that the circumstances for the delay in bringing [Disharoon's] case to trial are essentially neutral in determining whether [Disharoon] has been deprived of his right to a speedy trial." (Punctuation omitted.) *Rackoff v. State*.[12] See *Bass v. State*[13] ("trial court was authorized to find the parties equally responsible for the delay in bringing the case to trial").

(c) *The defendant's assertion of the right*. "While the state has a duty to bring the defendant to speedy trial, the defendant has a responsibility to assert that right." (Punctuation omitted.) *Bass*, supra, 275 Ga. App. at 261 (3). "Even though a defendant is not procedurally barred from raising a constitutional speedy trial claim at any time up to the point of trial, a defendant's failure to assert his claim in a timely manner can be weighed heavily against him as part of the *Barker* analysis." (Footnote omitted.) *Nusser v. State*.[14] Here, Disharoon never asserted his statutory right to a speedy trial[15] and did not assert his constitutional right to a speedy trial until he filed his motion for discharge and acquittal on May 29, 2007, approximately 14 days before his scheduled trial date. "Because [Disharoon] did not assert his constitutional rights until trial was imminent, we conclude that the trial court was authorized to weigh this factor in favor of the State." (Punctuation omitted.) Id. See *Ingram*, supra, 280 Ga. App. at 470 (1) (c); *Bass*, supra, 275 Ga. App. at 260-261 (3). In fact, contrary to Disharoon's argument, his failure to assert either his

---

[12] *Rackoff v. State*, 275 Ga. App. 737, 738 (1) (b) (621 SE2d 841) (2005).
[13] *Bass v. State*, 275 Ga. App. 259, 260 (2) (620 SE2d 184) (2005).
[14] *Nusser v. State*, 275 Ga. App. 896, 898 (622 SE2d 105) (2005).
[15] See OCGA § 17-7-170 (a).

statutory or constitutional right to a speedy trial "is entitled to strong evidentiary weight against [him]." (Punctuation omitted.) *Nelloms v. State.*[16]

(d) *The prejudice to the defendant.* "The test for whether a defendant has been prejudiced requires the court to consider three interests: preventing oppressive pretrial incarceration, minimizing a defendant's anxiety and concern, and limiting the possibility that the defense will be impaired." *Beasley v. State.*[17] "The most important component of the prejudice analysis is whether the defendant's ability to raise a defense was impaired by the delay." *Nusser,* supra, 275 Ga. App. at 900. See *Bass,* supra, 275 Ga. App. at 261 (4).

In this matter, Disharoon was released on bond from the youth detention center 21 days after his arrest. Thus, there was no oppressive pretrial incarceration. See *Christian v. State*[18] (three-month incarceration was not oppressive); *Ingram,* supra, 280 Ga. App. at 470 (1) (d) (six-month incarceration did not prejudice defendant). In addition, he offered no evidence of "sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment." (Punctuation omitted.) *Jackson v. State.*[19]

As for anxiety and concern of the accused, "it is always present to some extent, and thus absent some unusual showing is not likely to be determinative in defendant's favor." (Punctuation omitted.) *Christian,* supra, 281 Ga. at 477 (2). Importantly, "the fact that [Disharoon] never filed a speedy trial demand suggests that he was not suffering anxiety or stress from the delay." (Punctuation omitted.) *Mesaros v. State.*[20]

Nevertheless, Disharoon argues that a bond condition, which prohibited him from any contact with anyone under 16 years of age and which resulted in his brother moving away for one year, caused him great anxiety. However, that condition was part of a bond related to similar charges against him in another county[21] and thus was beyond the control of the trial court in this matter. Disharoon further contends that the bond that was actually issued by this trial court prohibited unsupervised contact with anyone under the age of 16 and thus also caused him great anxiety. However, the evidence showed that Disharoon had been home schooled even before his arrest; that he did not believe in unsupervised dating due to his family's religious

---

[16] *Nelloms v. State,* 274 Ga. 179, 181 (549 SE2d 381) (2001).

[17] *Beasley v. State,* 260 Ga. App. 74, 76 (d) (579 SE2d 19) (2003).

[18] *Christian v. State,* 281 Ga. 474, 477 (2) (640 SE2d 21) (2007).

[19] *Jackson v. State,* 272 Ga. 782, 785 (534 SE2d 796) (2000).

[20] *Mesaros v. State,* 283 Ga. App. 337, 339 (641 SE2d 559) (2007).

[21] Disharoon faced similar charges in Douglas County relating to the alleged sexual abuse of the same seven-year-old victim. Those charges were apparently dismissed in April 2006.

beliefs;[22] that one of his parents was often able to accompany him to events involving other children his age; and that his parents took it upon themselves to supervise him despite the fact that the bond only required that he be supervised by an adult 18 years of age or older. Additionally, the evidence demonstrated that Disharoon generally kept a positive attitude and, because of his faith in a higher power and belief in his own innocence, did not allow the pending charges to debilitate him.[23] Accordingly, there is no evidence that the delay caused Disharoon significant anxiety and concern beyond that generally experienced by defendants in his situation. See *Christian*, supra, 281 Ga. at 477; *Nusser*, supra, 275 Ga. App. at 900.

Finally, with regard to the impairment of his defense, Disharoon argues that during the course of the delay, his expert witness died, and thus he is now unable to present material evidence. Specifically, he claims that this expert, a psychiatrist who examined Disharoon not long after the charges arose, would have testified as to the results of the psychiatric examination and his opinion that Disharoon possessed no violent, predatory, or sexual tendencies. However, in the January 31, 2005, motion for continuance, which was filed by Disharoon upon his learning of this expert's death, Disharoon's counsel stated that another expert had already been hired to replace the deceased expert and would be available to testify within three months. Given such circumstances, the deceased expert's testimony would have been cumulative. See *Ingram*, supra, 280 Ga. App. at 471 (1) (d). Moreover, this expert was of "minimal importance, since he neither directly exculpated [Disharoon] nor directly inculpated anyone else." *Christian*, supra, 281 Ga. at 478. See *Ingram*, supra, 280 Ga. App. at 471 (1) (d). Compare *Hardeman v. State*[24] (testimony of deceased witness was material and went to the heart of the defense). Accordingly, Disharoon has failed to produce evidence showing that his defense was impaired by the delay.

(e) *Balancing of the four factors.* In balancing the four *Barker* factors, the trial court found that while the length of the delay was

---

[22] In a separate enumeration of error, Disharoon argues that the trial court's order incorrectly attributes to him statements that were actually made by his brother regarding his family's beliefs about unchaperoned dating. Although the court's order does contain this error, it was harmless given the fact that Disharoon's brother explicitly testified that Disharoon shared his and the family's beliefs regarding dating. See *McCollum v. State*, 258 Ga. App. 574, 579 (3) (574 SE2d 561) (2002).

[23] In another separate enumeration of error, Disharoon argues that the trial court's order incorrectly states that Disharoon testified to having no fear of the trial or conviction in this matter. In response to the State's cross-examination, Disharoon stated that he had no fear of the prosecutor. Additionally, Disharoon's father testified that Disharoon has no fear of conviction because he is innocent. Thus, Disharoon has failed to show that the alleged inaccuracy in the court's order was harmful. See *McCollum*, supra, 258 Ga. App. at 579 (3).

[24] *Hardeman v. State*, 280 Ga. App. 168, 171 (4) (633 SE2d 595) (2006).

presumptively prejudicial, the reasons for the delay could not be attributed to either the State or Disharoon. The trial court further noted that Disharoon never asserted his right to a speedy trial until the filing of his motion for discharge and acquittal, and that he had not been prejudiced by the delay. Consequently, the trial court ruled that Disharoon had not been denied his right to a speedy trial. Given the facts of this matter, we conclude that the trial court did not abuse its discretion in finding that Disharoon failed to show a constitutional violation. See *Christian*, supra, 281 Ga. at 478; *Ingram*, supra, 280 Ga. App. at 472 (1) (d). Accordingly, we affirm the trial court's denial of Disharoon's motion for discharge and acquittal.

2. In three separate enumerations, Disharoon claims that the trial court erred by (i) improperly considering evidence that Disharoon and his counsel left the courtroom during a hearing in May 2007, prior to the State being heard on a motion to continue it had filed; (ii) improperly finding that co-defense counsel, who is no longer involved in this matter, never filed a motion to withdraw; and (iii) improperly considering two leaves of absence filed by his defense counsel, despite the fact that those leaves of absence did not fall within a trial calendar and thus did not delay the trial. Although not expressly argued, Disharoon seemingly contends that the trial court improperly considered these facts in determining the reason for the delay pursuant to the second prong of the *Barker* analysis. However, given the fact that the trial court did not find that his or his counsel's actions were the cause of the delay, Disharoon has failed to demonstrate that he has been harmed by any of these alleged improper findings. "It is axiomatic that harm as well as error must be shown to authorize a reversal by this court." (Punctuation omitted.) *McCollum v. State*, 258 Ga. App. 574, 579 (3) (574 SE2d 561) (2002).

3. Disharoon also contends in a separate enumeration that the trial court erred in basing its order on the unsupported evidence that very few persons taking the SAT Reasoning Test for college admissions are "16 or younger" and therefore that Disharoon could take the test without being supervised by an adult pursuant to his bond. Although the trial court appears to have improperly taken judicial notice as to the average age of students taking the SAT,[25] the court did in fact also acknowledge that taking the test could possibly pose a problem for Disharoon. More importantly, Disharoon has failed to show that he was harmed by the trial court's allegedly unsupported conclusion. See *McCollum*, supra, 258 Ga. App. at 579 (3).

---

[25] A court may not take judicial notice of any fact without first announcing its intention on the record and then giving the parties an opportunity to respond. See *Mann v. State*, 285 Ga. App. 39, 42 (1) (645 SE2d 573) (2007).

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED OCTOBER 23, 2007.

*Jeffrey W. Frazier*, for appellant.
*Fred A. Lane, Jr., District Attorney, Paul E. Hemmann, Assistant District Attorney*, for appellee.